James T. McKay and Margaret McKay v. Commissioner.
McKay v. Commissioner
Docket No. 4466-67.
United States Tax Court
T.C. Memo 1968-276; 1968 Tax Ct. Memo LEXIS 22; 27 T.C.M. (CCH) 1478; T.C.M. (RIA) 68276; December 2, 1968. Filed James T. McKay, pro se, 2307 Windsor Rd., Alexandria, Va. Gerald D. Babbitt, for the respondent. Memorandum Findings of Fact and Opinion Respondent determined deficiencies in the income tax liability of petitioners for the years 1962, 1963 and 1964 as follows: 1962
$266.74
1963
382.82
1964
294.15 The deficiencies result from respondent's determination that deductions on account of depreciation on office equipment claimed by petitioners in their returns for the taxable years should be decreased in the respective amounts of $1,201.55, $1,112.16 and $1,223.90, and that medical expense deductions should be decreased in the respective amounts of $36.05, $33.37 and $36.72. Petitioners deny the existence of any deficiency and claim an overpayment with regard to their amended return for 1962 in the amount of $744.70 on account of a claimed investment credit. Findings of Fact The petitioners are individuals, husband and wife, who presently reside at, and who at the time of filing of the petition in this case resided at, 2307 Windsor Road, Alexandria, Virginia. They filed an original and an amended joint federal *27 income tax return for the calendar year 1962, and original returns only for the calendar years 1963 and 1964 with the district director of internal revenue, Richmond, Virginia. James T. McKay will be referred to hereinafter as "petitioner." On February 24, 1958, petitioner, who was then living in California, acquired by purchase a one-third interest in a partnership known as National Guidex Company, with a principal place of business at 216 Market Street, San Francisco, California. The original partners were Charles Tracey and Glenn E. Van Deveere, who formed the partnership in 1956. The principal business activity of the partnership was the sale of advertising space in a folder known as a Guidex designed to be used by householders in designated areas of a particular city in connection with their local telephone directory. After the advertisements were sold and the folders were printed they were mailed in bulk to the locality where the advertisers carried on their businesses for distribution to the householders. The partnership kept its records on a cash basis and filed its federal income tax returns on a calendar year basis. Petitioner purchased his interest in the partnership *28 as a result of following up a "business opportunity" advertisement in a San Francisco newspaper. He became intrigued with the possibilities of the partnership and its potential in making money and purchased his interest in the partnership in order to capitalize on this potential. As petitioner testified, he was "trying to buy potential; not office furniture." At the time petitioner acquired his interest in the partnership it employed two clerical employees and had at least ten commission salesmen in the Northern California area. It also conducted franchise operations in Chicago, Illinois; Gary, Indiana; Toledo, Ohio; Cleveland, Ohio; Hackensack, New Jersey; Detroit, Michigan; Honolulu, Hawaii and Miami, Florida, and was planning another franchise operation for St. Louis, Missouri. Also, at that time the partnership was occupying premises which it had leased at 1005 Market Street, San Francisco. It had engaged an accountant, was maintaining a bank account and had a city license to do business. On February 24, 1958 a written agreement was entered into between the petitioner James T. McKay, Charles Tracey and Glenn E. Van Deveere under which the petitioner obtained a one-third interest *29 in the partnership in return for his payment of $25,000 to Tracey and Van Deveere and his assumption of one-third of the partnership liabilities totaling $5,579.12, or $1,859.71. The written agreement contained the following pertinent provisions: An inventory shall be taken as of this day and the books of account of the partnership shall be closed. Immediately thereafter the books of account shall be adjusted to reflect the assignment to JAMES T. McKAY of a one-third interest in the net worth of the partnership. * * * This partnership shall continue for a period of ten (10) years from date and from year to year thereafter, unless sooner terminated. At that time the assets appearing on the balance sheet of the partnership consisted of cash, loans and prepayments, office equipment and accounts receivable; and the partnership's adjusted basis and the fair market value of these assets were as follows: 1480 Partnership Assets
Adjusted Basis ofPartnership Assets
Fair Market Value ofPartnership Assets
Cash
$ 822.10
$ 822.10
Loans and Prepayments
244.30
244.30
Office Equipment
401.20
2,000.00
Accounts Receivable
[1] 40,800.87
Total Partnership Tangible Assets $1,467.60
$43,867.27
*30 The petitioner's one-third proportionate share of the adjusted basis and fair market value of these assets of the partnership on February 24, 1958 was as follows: Adjusted Basis of
Fair Market Value of
One-third of Part-
One-third of Part-
Partnership Assets
nership Assets
nership Assets
Cash
$ 274.03
$ 274.03
Loans and Prepayments
81.44
81.44
Office Equipment
133.73
666.67
Accounts Receivable
13,600.29
Total $ 489.20
$14,622.43 The 1958 partnership return contained a timely election to apply the provisions of section 743(b) of the 1954 Internal Revenue Code. [2] Pursuant to this election the partnership increased the adjusted basis of the partnership property, as to the transferee-petitioner only, by the excess of the transferee-petitioner's interest in the partnership of $26,859.71, over his proportionate share of the adjusted basis of the partnership property of $489.20, or a total of $26,370.51. The special basis adjustment to the transferee-petitioner *31 of $26,370.51 was allocated by the partnership, as in column (c) below: (b)
(c)
(d)
Adjusted Basis
Allocation of
Basis of Peti-
of One-third
Special Ba-
tioner's Part-
(a)
of Partner-
sis Adjust-
nership In-
Partnership Assets
ship Assets
ment
terest
Cash
$274.03
$ 274.03
Loans and Prepayments
81.44
81.44
Office Equipment
133.73
133.73
Unallocated Portion of Special Basis Adjustment
$12,770.22
12,770.22
Accounts Receivable
13,600.29
13,600.29
Total $489.20
$26,370.51
$26,859.71 The unallocated portion of the special basis adjustment of $12,770.22 was not then assigned by the partnership to either tangible or intangible assets. During the taxable years 1958 through 1961, the petitioner collected a portion of the partnership accounts receivable which he had treated as having a special basis to him of $13,600.29. On his federal income tax returns for the years 1958 through 1961, the petitioner noted the collection of these receivables but did not include them in gross income due to the fact that the amounts collected together *32 with the bad debts charged off were not in excess of the special basis claimed by him of $13,600.29. However, petitioner's share of the amounts of the receivables collected or charged off were properly used by him in the reduction of his special basis therein which as of December 31, 1961, had been reduced to $4,896.72, and his adjusted basis with regard to his partnership interest had been reduced to $18,156.14. 1481 During the taxable years 1958 through 1961, the petitioner did not claim any deduction with respect to the unallocated portion of the special basis adjustment of $12,770.22, but the partnership claimed depreciation deductions with respect to the office equipment in which it had an adjusted basis, as of February 24, 1958, of $401.20. Shortly after petitioner purchased the partnership interest in National Guidex Co. a corporation was organized by petitioner, Tracey and Van Deveere, each of whom owned 8 shares of its stock. Without any formal transactions between it and the partnership, the corporation commenced the conduct of the same business carried on by the partnership (including the collection of its accounts in return for a management fee) in the premises *33 leased by the partnership and using the office equipment of the partnership which it leased on a month-to-month basis. The corporation had the same employees, commission salesmen and franchise operations. By the middle of 1959 Tracey and Van Deveere had ceased to have any connection with either the partnership or the corporation. After the middle of 1959 petitioner was alone in the business. Thereafter petitioner carried on the business by trying to solicit new business, to develop the product and to improve its saleability and "the potentiality of repeat business." The taxable income of the partnership for the calendar years 1957 through 1961, as reflected on the federal income tax returns filed by the partnership were as follows: 1957
$ 9,104.10
1958
15,106.65
1959
2,021.18
1960
60.15
1961
182.90
Petitioner accepted employment with the U.S. Department of Commerce on December 8, 1961. In 1962 he learned that this employment would require him to live in Washington, D.C. At or about this time he decided to wind up the Guidex business in California. His income tax return for 1962 recites that the office equipment here in question was acquired by him on January 1, 1962, and *34 that the liquidation of the partnership occurred as of December 31, 1961. Opinion KERN, Judge: There is little dispute between the parties with regard to the evidentiary facts in this proceeding, many of which have been stipulated. The parties are even in agreement with regard to some factual conclusions as to which the evidentiary facts are not clear, e.g., that the office equipment was used by the partnership in its business up to the time of its dissolution and thereafter by petitioner, and that the partnership assets (including the office equipment) were distributed to petitioner upon the dissolution of the partnership which took place on December 31, 1961. [3]
Upon the undisputed facts contained in the record before us we decide the issues presented by the parties in favor of respondent, with the *35 caveat that the amount of petitioner's basis in the office equipment and consequently the amounts of depreciation thereon properly allowable to petitioner should be slightly higher than the amounts used by respondent in his determination of deficiency, as respondent concedes on brief. On this issue involving the proper basis to petitioner of the office equipment for purposes of computing his depreciation deductions during the taxable years petitioner contends that the proper basis to him as a transferee partner pursuant to the provisions of sections 743, 754 and 755 of the Code should be $12,770.22, the amount of the unallocated portion of the special basis adjustments provided by those sections. We set out in the margin hereof section 743(b) and section 755. [4] Petitioner predicates these contentions on the argument that the only 1482 property distributed to him on the liquidation of the partnership with regard to which an adjustment to basis could have been made [5] consisted of the office equipment and this property was depreciable in his hands over a ten year period beginning January 1, 1962. *36 Respondent originally determined that the basis of this property to petitioner was $377.76 with a remaining estimated life of five years. On brief respondent contends that the basis was $420.13. This small increase in petitioner's special basis conceded by respondent relating to the office equipment results from the adjustments to his partnership basis called for by section 705 on account of the distributions made to him by the partnership which were properly deducted from his basis as to the receivables instead of being reported in income. Consequently his adjusted basis relating to his partnership basis called for by section 705 to the receivables are to be considered under section 732(c) as being the respective amounts of $18,156.14 and $4,896.72. Respondent explains that the difference between these two figures, or $13,259.42 should be allocated among the assets of the partnership other than the accounts receivable in proportion to their adjusted basis to the partnership as required by section 732(b). We set out in the margin hereof section 732(b) and (c). [6] Respondent contends that these remaining assets consisted of the office equipment and a non-depreciable intangible asset *37 which was in the nature of going concern value or good will or profit potential. By applying the provisions of Treasury Regulations 1.732-1(d)(vi) and 1.732-2(c) respondent computes that the proper allocation of petitioner's special basis is as follows: To accounts receivable
$ 4,896.72
To non-depreciable intangible
12,839.29
To office equipment 420.13
Total basis $18,156.14 The crucial questions are whether the partnership possessed any such non-depreciable intangible asset in 1958 and whether petitioner purchased a part thereof in that year to which a part of petitioner's special basis should be allocated. *38 Petitioner first argues that because the only specific references to the existence of an intangible which are contained in the pleadings are allegations of the petition with regard to "good will" which were denied in respondent's answer, we are 1483 precluded from finding the existence of any other intangible asset of the partnership, that the burden of proving the existence of good will or any other intangible as an asset of the partnership is on respondent, and that the facts of record are inconsistent with the existence of good will. It is obvious that implicit in respondent's determination with regard to the depreciation deductions disallowed was a determination that petitioner was not entitled to increase his basis with regard to office equipment by assigning thereto in 1962 any part of the "unallocated portion of special basis adjustment" in the amount of $12,770.22. Petitioners' allegations of error are as follows: The determination of the tax set forth in the said notice of deficiency is based upon the following errors: (a)(i) The Commissioner decreased the amount of allowable depreciation on office equipment in each of the years 1962, 1963, and 1964, by changing *39 the acquisitions basis of petitioners' cost from the claimed special adjusted basis of $12,770.22 on acquisition of a partnership interest to the sum of $666.67 as the basis of allowable cost for special adjusted basis. (ii) Further, upon information and belief, the petitioners allege that it is the position of the Commissioner that the petitioners paid some $12,200 for "good will" and that this good will was contributed to the National Guidex Corporation, and that petitioners were entitled to capital loss in 1962 with carryover based on the worthlessness of this stock claimed in petitioners' 1964 return. Paragraph 5(b) of their petition reads as follows: (b) That petitioners' total cost basis of $26,859.71 for the partnership interest transferred was properly allocated as follows: Unrealized receivables
$13,600.29
One-third of basis assets
$ 489.20
Special basis ad- justment
12,770.22 13,259.42
$26,859.71 That in the absence of any assets other than office equipment at the time of distribution of partnership assets on dissolution of the partnership, the petitioners properly assigned their special basis adjustment to office equipment distributed *40 and received on January 1, 1962; further, that "good will" was not an asset of the partnership. Thus the burden of proving "the absence of any assets other than office equipment" is on petitioners in addition to proving that good will was not an asset of the partnership. In our opinion, petitioners have failed to carry their burden of proof. Indeed, the record as a whole supports a conclusion to the contrary. Petitioner was willing to and did pay over $26,000 for a one-third interest in a partnership at a time when one-third of the stipulated fair market value of its tangible assets was a little over $1,000 and one-third of the fair market value of its only other book asset (accounts receivable) was $13,600. [7] His own testimony was to the effect that he was not interested in the value of the specific partnership assets shown on its books (cash, loans and prepayments, office equipment and accounts receivable) but was "trying to buy potential [in making money]." Petitioner did not prove that this "potential" was anything other than an intangible asset either in the nature of going concern value, United States v. Cornish, 348 F. 2d 175, or good will, Jack Daniel Distillery v. United States, 379 F. 2d 569. *41 See also Seaboard Finance Co. v. Commissioner, 367 F. 2d 646, 649-50, affirming a Memorandum Opinion of this Court, and Boe v. Commissioner, 307 F. 2d 339, affirming 35 T.C. 720. Petitioners' second contention is that they are entitled to an investment credit as a result of the acquisition by petitioner James T. McKay of the office equipment from the partnership upon the partnership's liquidation. Assuming petitioner acquired the office equipment on January 1, 1962, both parties agree that the office equipment was "tangible personal property" which might constitute "section 38 property" as described in section 48(a)[8] of the Code. The question then arises as to whether it is a "qualified investment," under the provisions of section 46(c)(1)(A) or (B), i.e., whether it 1484 is "new section 38 property" or "used section 38 property" as defined in section 48(b) and 48(c)(1). Both parties agree that it is not "new section 38 property" described in section 48(b). [9]
*42 The parties differ, however, on whether the definition of "used section 38 property" in section 48(c) applies to the office equipment in question. That section states, in pertinent part: SEC. 48(c). Used Section 38 Property. - (1) In General. - For purposes of the subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. Property shall not be treated as "used section 38 property if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d) (2)(A) or (B) to a person who used such property before such acquisition). * * * (3) Definitions. - For purposes of this subsection - (A) Purchase. - The term "purchase" has the meaning assigned to such term by section 179(d)(2). Petitioner maintains that he has complied with section 48(c) since he acquired the office equipment: (1) by "purchase," as defined in that section and other sections made applicable thereto by cross reference; *43 (2) from a different "person," namely the partnership in which he asserts he had a one-third interest by virtue of the written agreement to purchase a one-third interest in the partnership which he entered into on February 24, 1958; and (3) after midnight of December 31, 1961, the moment at which he contends the partnership terminated for tax purposes and presumably wound up its affairs for purposes of local California law. Respondent, on the other hand, argues that petitioner did not comply with the requirements of section 48(c) by meeting any of the conditions which the petitioner maintains that he met. Section 48(c) as set out above, states that property which might otherwise be treated as "used section 38 property" cannot be so treated if, before its acquisition by a taxpayer it was used by a person bearing a relationship to the taxpayer described in section 179(d)(2)(A). Section 179(d)(2)(A), [10] describes such a person as a person from whom the acquisition of property would result in the disallowance of losses under section 707(b). And section 707(b)(1)(A)[11] describes such a person as a partnership in which the taxpayer as a partner owned directly or indirectly more than *44 50 percent of either the capital interest or the profits interest. *45 Despite the terms of the agreement of February 24, 1958 under which petitioner initially purchased his partnership interest it appears that before the claimed dissolution of the partnership on midnight December 31, 1961 petitioner was a member of the partnership here involved in which he owned 100 percent of the capital interest, if indeed the partnership then existed and had not been dissolved prior to that date. In any event it is clear from the facts which we have before us in this record that we cannot make a finding that petitioner did not own "more than 50 percent of the 1485 capital interest, or the profits interest, in [the] partnership." Petitioner himself testified that Tracey and Van Deveere, his former partners, ceased to have any connection with the partnership by the middle of 1959 and that he had little, if any contact with either of them thereafter. His treatment of the assets of the partnership upon the alleged liquidation of the partnership on December 31, 1961, or January 1, 1962, and prior and subsequent thereto, indicates that he took over all of these assets under claim of right and without regard to any rights which might have been claimed by a former *46 partner. With regard to one of his former partners he testified that the partner "turned back his stock in the corporation" and "ceased to take part in the activities of the partnership or corporation" after November, 1958. He also testified that he was "alone in the business" after "the middle of 1959 definitely." All of this is consistent with his having acquired, prior to 1961, "more than 50 percent of the capital interest, or the profits interest, in [the] partnership." Petitioner has completely failed to prove the contrary, i.e., that he held a capital interest or a profits interest of 50 percent or less in the partnership immediately before its dissolution on midnight December 31, 1961. For these reasons we conclude that the office equipment was not "used section 38 property" because, before its use by petitioner, it was used by a person related to petitioner in a manner described in the second sentence of section 48(c)(1). Therefore petitioner is not entitled to his claimed investment credit. Decision will be entered under Rule 50. Footnotes
1. At the time petitioner purchased his one-third interest in the partnership he believed that the accounts receivable of the partnership amounted to only $20,000.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. In view of petitioner's testimony that his two partners and business associates - Tracey and Van Deveere - ceased to take part in the activities of the partnership or corporation after 1958 and that he was alone in the business "definitely" after the middle of 1959, it is difficult to understand why the dissolution and distribution did not occur until December 31, 1961.↩
4. SEC. 743. OPTIONAL ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY. (b) Adjustment to Basis of Partnership Property. - In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect to which the election provided in section 754 is in effect shall - (1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, or (2) decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his interest in the partnership. Under regulations prescribed by the Secretary or his delegate, such increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. A partner's proportionate share of the adjusted basis of partnership property shall be determined in accordance with his interest in partnership capital and, in the case of an agreement described in section 704(c)(2) (relating to effect of partnership agreement on contributed property), such share shall be determined by taking such agreement into account. In the case of an adjustment under this subsection to the basis of partnership property subject to depletion, any depletion allowable shall be determined separately for the transferee partner with respect to his interest in such property. SEC. 755. RULES FOR ALLOCATION OF BASIS. (a) General Rule. - Any increase or decrease in the adjusted basis of partnership property under section 734(b) (relating to the optional adjustment to the basis of undistributed partnership property) or section 743(b) (relating to the optional adjustment to the basis of partnership property in the case of a transfer of an interest in a partnership) shall, except as provided in subsection (b), be allocated - (1) in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of partnership properties, or (2) in any other manner permitted by regulations prescribed by the Secretary or his delegate. (b) Special Rule. - In applying the allocation rules in subsection (a), increases or decreases in the adjusted basis of partnership property arising from a distribution of, or a transfer of an interest attributable to, property consisting of - (1) capital assets and property described in section 1231(b), or (2) any other property of the partnership, shall be allocated to partnership property of a like character except that the basis of any such partnership property shall not be reduced below zero. If, in the case of a distribution, the adjustment to basis of property described in paragraph (1) or (2) is prevented by the absence of such property or by insufficient adjusted basis for such property, such adjustment shall be applied to subsequently acquired property of a like character in accordance with regulations prescribed by the Secretary or his delegate. ↩
5. Maximum adjustments had already been made to the accounts receivable assets of the partnership.↩
6. SEC. 732. BASIS OF DISTRIBUTED PROPERTY OTHER THAN MONEY. (b) Distributions in Liquidation. - The basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction. (c) Allocation of Basis. - The basis of distributed properties to which subsection (a)(2) or subsection (b) is applicable shall be allocated - (1) first to any unrealized receivables (as defined in section 751(c)) and inventory items (as defined in section 751(d)(2)) in an amount equal to the adjusted basis of each such property to the partnership (or if the basis to be allocated is less than the sum of the adjusted bases of such properties to the partnership, in proportion to such bases), and (2) to the extent of any remaining basis, to any other distributed properties in proportion to their adjusted bases to the partnership.↩
7. An amount much greater than he thought it was at the time of the purchase.↩
8. SEC. 48. DEFINITIONS: SPECIAL RULES. (a) Section 38 Property. - (1) In General. - Except as provided in this subsection, the term "section 38 property" means - (A) tangible personal property, or * * * Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more. ↩
9. SEC. 48(b). New Section 38 Property. - For purposes of this subpart, the term "new section 38 property" means section 38 property - (1) the construction, reconstruction or erection of which is completed by the taxpayer after December 31, 1961, or (2) acquired after December 31, 1961, if the original use of such property commences with the taxpayer and commences after such date. In applying section 46(c)(1)(A)↩ in the case of property described in paragraph (1), there shall be taken into account only that portion of the basis which is properly attributable to construction, reconstruction, or erection after December 31, 1961.
10. SEC. 179. ADDITIONAL FIRST-YEAR DEPRECIATION ALLOWABLE FOR SMALL BUSINESS. (d) Definitions and Special Rules. - * * * (2) Purchase Defined. - For purposes of paragraph (1), the term "purchase" means any acquisition of property, but only if - (A) the property is not acquired from a person whose relationship to the person acquiring it would result in the disallowance of losses under section 267 or 707(b) (but, applying section 267(b) and (c) for purposes of this section, paragraph (4) of section 267(c)↩ shall be treated as providing that the family of an individual shall include only his spouse ancestors, and lineal descendants), * * *. 11. SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP. (b) Certain Sales or Exchanges of Property With Respect to Controlled Partnerships. - (1) Losses disallowed. - No deduction shall be allowed in respect of losses from sales or exchanges of property (other than an interest in the partnership), directly or indirectly, between - (A) a partnership and a partner owning, directly or indirectly, more than 50 percent of the capital interest, or the profits interest, in such partnership, or * * *.↩