Peter E.C. MUSERLIAN, Theodora Muserlian and Peter Muserlian, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 739, Docket 90–4053.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1990.

Decided April 23, 1991.

Joseph W. Mooney, III, Clayton, Mo. (Beach, Burcke, Mooney & Lake, P.C., of counsel), for petitioners-appellants.

Bridget M. Rowan, Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Richard Farber, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before KEARSE, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Petitioners-appellants, Peter Muserlian ("the taxpayer"), his wife Theodora Muserlian and their son, Peter E.C. Muserlian, appeal from a decision entered in the United States Tax Court (Goffe, *J.*) affirming the disallowance by respondent-appellee, the Commissioner of Internal Revenue ("Commissioner"), of certain deductions taken by appellants on their tax returns for the years 1981 and 1982. The Commissioner had issued a notice of deficiency disallowing interest payment deductions taken by Peter Muserlian on various purported "loans" made to him by his five children. A notice of deficiency also had been issued against Theodora and Peter E.C. Muserlian (the "Muserlians") disallowing certain depreciation deductions relating to their interests in the assets of a partnership, Upper New York Realty Company ("UNYR"). The Muserlians held their interests in UNYR by virtue of their status as partners in T.E. Associates ("Associates"), which was composed of Theodora, Peter E.C., and the other four Muserlian children and to which the taxpayer had sold an interest in UNYR.[1]

On appellants' petition for review of the Commissioner's determinations, Judge Goffe found that the loans made to the taxpayer had not represented bona fide indebtedness and that the interest payment deductions properly were disallowed. Judge Goffe also found that, contrary to the Commissioner's contention, the sale of

---

1. A third notice of deficiency relating to alleged unpaid gift taxes on the transfer to Associates of an interest in UNYR had also been lodged against Muserlian, but, after trial in the Tax Court on appellants' petition for review, the Commissioner conceded this issue.

an interest in UNYR by the taxpayer to Associates was not a sham transaction. However, the tax court agreed with the Commissioner's alternative contention that Associates' stepped-up basis in UNYR's depreciable assets, pursuant to 26 U.S.C. § 743(b), had been allocated to partnership assets improperly and that the depreciation deductions should be restricted to the extent provided in the notice of deficiency.

On appeal, appellants contend that the evidence at trial established that the loans were not merely "givebacks" of money that the taxpayer earlier had presented to his children as gifts because, in making the gifts, the taxpayer possessed genuine donative intent. Secondly, appellants argue that the amount of overvaluation in the stepped-up basis claimed by Associates was characterized improperly by the tax court as a nondepreciable, intangible asset, because no evidence in the record supported this characterization.

We agree with the tax court's finding that the taxpayer lacked the requisite donative intent in making the "gifts" that preceded the loans from his children, and affirm the disallowance of interest payment deductions. We also agree with the tax court's restriction of Associates' stepped-up basis in the depreciable assets of UNYR because we find insufficient evidence in the record to conclude that the excess of the purchase price over the value of UNYR's tangible assets was allocable to a depreciable asset.

## BACKGROUND

### 1. Deductions on Interest Payments

In 1974, the taxpayer began making "gifts" of money to his adult children. The "gifts" typically were in the amount of $5,000. Soon after presenting the gift, the taxpayer would ask for and receive a "loan" from the donee-child in an amount equal to the gift. Upon receiving the loan, the taxpayer would issue to the child a demand note bearing a 6% interest rate. Usually, a gift to another child in a similar amount would be made shortly thereafter. The taxpayer's tax returns for 1981 and 1982 indicate 40 separate loans of this type

were made, totalling over $200,000. In 1981 and 1982, the interest paid on the loans totalled $13,250 and $14,750, respectively. The taxpayer deducted the interest payments on his returns for the two years.

### 2. The Muserlians' Depreciation Deductions

The taxpayer owned a 50% interest in the general partnership, UNYR, which owns a successful shopping center in Syracuse, New York called "Shop City." On June 30, 1981, the taxpayer sold a 24% share of the partnership interest in UNYR to Associates. Associates' six partners were the taxpayer's wife, Theodora, and their five adult children, Peter E.C. Muserlian, Joan Cavazuti, Donna E. Dixon, Patricia A. Golding and Margaret M. Mooney. Theodora owned 79% of Associates, with the balance of 21% owned equally by the five children (i.e., 4.2% each).

To acquire the 24% interest, Associates issued a note payable to the taxpayer in the face amount of $2.4 million. No payments on the $2.4 million principal were due for 12 years, at which time the principal amount would be paid in two balloon installments, in June 1993 and January 1994. Payments on the 6% annual interest rate were to be made monthly from the date of issuance. The payments were secured by the 24% partnership interest held by Associates, the sales agreement providing that the partnership interest would revert to the taxpayer in the event of default in payment. No other security was provided, nor was there any negotiation over the terms of the transaction. However, the tax court found that, in designing the transaction, the taxpayer had established terms similar to those that would have been agreed to if the deal had been at arm's length.

In its tax return for 1981, UNYR elected under section 754 of the Internal Revenue Code to "step-up" the basis of that portion of the partnership assets allocated to the 24% interest owned by Associates. In calculating its basis in UNYR, Associates used the face amount of the note, $2.4 million. UNYR calculated its depreciation deductions in 1981 and 1982 based on the

stepped-up basis. The depreciation deductions (combined with deductions for interest paid on the note by Associates to the taxpayer) resulted in net investment losses in the return of income from UNYR realized by Associates and, accordingly, its six partners. Because the taxpayer and his wife filed joint returns in 1981 and 1982, the depreciation deductions were applied against their combined income.

### 3. Commissioner's Disallowance of Appellants' Deductions

In 1984, the taxpayer and his wife were audited by the IRS. The Commissioner issued three notices of deficiency, two of which are before us on this appeal. *See supra* note 1. The first notice disallowed interest deductions made in 1981 and 1982 joint tax returns filed by the taxpayer and his wife on the loans from their children, because the loans did not represent bona fide indebtedness. In the second notice, the Commissioner disallowed all depreciation and interest payment deductions and all items of income and loss with respect to Associates, primarily on the grounds that the transfer of the 24% interest in UNYR was a sham transaction, designed so that Associates' basis was inflated beyond the true cost to the six Associates partners of acquiring the interest. This latter disallowance resulted in tax deficiencies for the tax returns of Theodora and the taxpayer for 1981 and 1982 of $45,724.07 and $67,850.56, respectively, and of $2,338 for Peter E.C.'s 1982 tax return.

Appellants petitioned the tax court for review of the notices of deficiency. On September 7, 1989, after trial, the tax court issued a decision in which it found that the "gifts" to the Muserlian children were made without the requisite donative intent. The disallowance of deductions of interest payments on the loans the taxpayer received from his children, therefore, was upheld. The tax court agreed with the Muserlians that the transfer of the 24% interest in UNYR to Associates was not a "sham," finding that Associates was the true owner of the interest. However, the tax court further found that Associates had allocated improperly its share of the basis in depreciable partnership property. Specifically, it concluded that the stated purchase price claimed by Associates ($2.4 million) exceeded the fair market value of the partnership assets purchased ($1.283 million) by $1.117 million. Judge Goffe "conclude[d] from the record before [him] that [this excess amount could only represent] a nondepreciable intangible asset in the nature of goodwill or going concern value," thereby limiting the amount for Associates' stepped-up basis in the UNYR assets to the fair market value of the assets.

On April 24, 1990, appellants filed a timely notice of appeal from the tax court decision. We have jurisdiction over the appeal pursuant to section 7482 of the Internal Revenue Code.

## DISCUSSION

Deficiency determinations by the Commissioner of Internal Revenue are presumed to be correct. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Bernuth v. Commissioner,* 470 F.2d 710, 714 (2d Cir.1972). "The burden is on the taxpayer to show that the Commissioner is wrong, ... although he need not prove what the correct tax would be.... Once the taxpayer shows that the deficiency assessment is wrong, the burden shifts back to the Commissioner to show the existence and amount of the deficiency." *Bernuth,* 470 F.2d at 714 (citations omitted). On appeal from an adverse decision in the tax court, an appellant must show that the tax court's findings of fact were "clearly erroneous." *Rodman v. Commissioner,* 542 F.2d 845, 849 (2d Cir.1976); *Beck v. Commissioner,* 678 F.2d 818, 820 (9th Cir.1982). Transactions that take place among family members and create tax benefits for the family members are carefully scrutinized. *Commissioner v. Culbertson,* 337 U.S. 733, 746, 69 S.Ct. 1210, 1216, 93 L.Ed. 1659 (1949). Here, appellants bear the burden of establishing that the intrafamily loans were bona fide and that Associates used the proper basis for its 24% interest in UNYR in calculating its depreciation deductions. *See Interstate*

*Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607 (1943).

1. *The Deduction of Interest Payments Made on the Loans Received by the Taxpayer from his Children.*

 Section 163(a) of the Internal Revenue Code allows for the deduction of interest paid on indebtedness. However, where the taxpayer's indebtedness is not bona fide, no deduction is allowed for any purported interest payments made on that "debt." *Knetsch v. United States,* 364 U.S. 361, 365–67, 81 S.Ct. 132, 134–36, 5 L.Ed.2d 128 (1960). To determine whether indebtedness is bona fide, a court must look to the substance of the transaction, not the formalities surrounding it. *See Columbia Gas Sys., Inc. v. United States,* 473 F.2d 1244, 1247–49 (2d Cir.1973).

 In this case, the applicable definition of "gift" is supplied by New York law. *See United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). Under New York law, the necessary elements for a valid inter vivos gift are the intent of the donor to make a gift, delivery of the gift to the donee with donative intent and acceptance of the gift on the part of the donee. *Gruen v. Gruen,* 68 N.Y.2d 48, 53, 496 N.E.2d 869, 872, 505 N.Y.S.2d 849, 852 (1986); *In re Szabo's Estate,* 10 N.Y.2d 94, 98, 176 N.E.2d 395, 396, 217 N.Y.S.2d 593, 595 (1961).

Here, the taxpayer's donative intent is the only element at issue on appeal. The tax court found numerous indications of the absence of donative intent. For example, when sending a "gift," the taxpayer frequently transferred two checks to his donee, one in the amount of the subsequent loan and one in a smaller amount; the smaller amount would be kept by the donee, while the larger amount shortly thereafter would be transferred back to the taxpayer as a "loan." The tax court concluded that the taxpayer intended only the smaller amount to be a bona fide gift, while the larger amount would be returned to him. Furthermore, each loan was made only after the "lender" had received a

"gift," and on only one occasion had the taxpayer's request for a loan been denied.

The taxpayer claims that the correspondence accompanying each "gift" evinces his donative intent. *See Gruen,* 68 N.Y.2d at 54, 496 N.E.2d at 872, 505 N.Y.S.2d at 852. However, a review of the record reveals that the terms "gift" and "loan" are used in the correspondence as mere formalities. Much of the correspondence actually supports the Commissioner's position. For example, the correspondence shows that the "gifts" often were accompanied by a demand note made out by the donor, the taxpayer, payable to the donee, apparently in anticipation of receiving a loan in return from the donee.

The taxpayer's contention that the absence of a binding agreement between himself and his donee-children demonstrates that the "gifts" (and, therefore, the "loans") were bona fide is without merit. The taxpayer testified that he made the gifts in anticipation of receiving a loan back, "to enable [him] to make further gifts to other children." This testimony provides at least circumstantial evidence of an arrangement to conduct the transfers solely for the purpose of generating tax benefits. *See Guaranty Trust Co. v. Commissioner,* 98 F.2d 62, 66 (2d Cir.1938) (succession of events whereby money given by husband as gift to wife was used by wife to set up trusts from which husband received loans viewed as "component parts of single transaction[]" designed to give husband tax deductions without parting with control of his money).

Nor does the fact that the tax court expressly credited the taxpayer's testimony describing the money transfers between his children and him compel a different result. The testimony, insofar as it pertained to anticipation of loan-backs of the "gifts," supported a finding of lack of donative intent. By making "gifts" and then receiving "loans" from his donees, the taxpayer was actually borrowing his own money to create interest expense. *See Goldstein v. Commissioner,* 364 F.2d 734, 741–42 (2d Cir.1966), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967); *see also*

*Rice's Toyota World, Inc. v. Commissioner*, 752 F.2d 89, 96 (4th Cir.1985).

2. *Associates' Stepped–Up Basis of its Share of UNYR's Depreciable Assets*

■ Generally, a taxpayer's basis in an asset is equal to the cost to the taxpayer of acquiring the asset. *See* 26 U.S.C. § 1012; *Lemmen v. Commissioner*, 77 T.C. 1326, 1347–48 (1981); *Bixby v. Commissioner*, 58 T.C. 757, 776 (1972). Section 743 of the Code permits a new partner who has bought into an existing partnership that owns appreciated assets to reflect in his basis in the partnership assets the added cost to him of acquiring the interest in those assets:

> In the case of transfer of an interest in a partnership by sale ..., a partnership [which has elected to permit a step-up] shall ... increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property.... Under regulations prescribed by the Secretary, such increase ... shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only.

26 U.S.C. § 743(b). By allowing a "step-up" in basis, the provision places the new partner in the same position as if he had purchased his proportionate share of the partnership property directly and before appreciation, as did the original partners. 3 J. Rabkin & M. Johnson, *Fed. Inc. Gift & Est. Tax'n* (MB) § 16.12[8]–[9] (Nov.1989); Weidner, *A Perspective to Reconsider Partnership Law*, 16 Fla.St.U.L.Rev. 1, 34 (1988). Under section 743(b), the amount available for the step-up in basis is the price paid by the new partner for his interest in the partnership less his proportionate share of the existing adjusted basis of the partnership property. 3 J. Rabkin & M. Johnson, *Fed. Inc. Gift & Est. Tax'n* (MB) § 16.12[9] (Nov.1989); 9 Mertens, *Law of Federal Income Taxation*, § 35.118 (Rev. 1990).

Section 755(a)(1) provides that any increase in the adjusted basis of the partnership property shall "be allocated ... in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of partnership properties." In this way, section 755 allows an increase in a new partner's basis in an asset pursuant to section 743(b) only to the extent of the fair market value of that asset. *See also* 26 C.F.R. § 1.755–1(a)(1)(i), (ii) (1982). Specifically, section 755 directs that the increase in the adjusted basis shall be allocated to two categories of partnership property: (1) capital assets and property used in trade or business, or (2) any other partnership property. 26 U.S.C. § 755(b). In this case, the $2.4 million cost basis must be allocated first to the property described in section 755(b), which, under the fair market value appraisal accepted by the tax court, was equipment (valued at $13,000), land (valued at $115,500) and improvements (valued at $1,154,500). This leaves a total of $1.117 million unallocated to any specific partnership assets.

■ The Commissioner argues for the same result reached by the tax court—the limitation of Associates' basis in UNYR depreciable property to the fair market value of the tangible assets—but arrives at this result through a different method, in which the unallocated amount of $1.117 million is not considered in the calculation of basis for any purpose. The Commissioner contends that the Muserlians tried to thwart the intent of the stepped-up basis provision, as evinced by section 755(a)(1), by using an inflated purchase price for their 24% interest in UNYR in order to increase Associates' basis in depreciable partnership assets far beyond the fair market value of those assets, thereby providing excessive depreciation deductions that were passed on to Associates' partners. The Commissioner contends that the transfer of the 24% interest in UNYR by the taxpayer to Associates for the $2.4 million note was a "sham" and that the inflated face amount of the note should be ignored because it does not reflect the economic substance of the arrangement, *see Lemmen*, 77 T.C. at 1347. Instead, the Commissioner argues,

the then-present value of the note ($1,215,984) represents the true purchase price for purposes of determining basis.

██ We believe that the tax court properly rejected this argument, because the Commissioner failed to produce evidence in support of and effectively abandoned, the "sham" theory. Transactions cannot be disregarded as without economic substance merely because they are not conducted at arm's length. *Investors Diversified Servs., Inc. v. Commissioner*, 325 F.2d 341, 352 (8th Cir.1963). Here, the taxpayer had motives for the sale other than the generation of tax benefits. For example, he wished to withdraw from the day-to-day management of Shop City for health reasons and hoped that, eventually, his son, Peter E.C., would manage the mall. The conduct of the taxpayer and Peter E.C. after the sale was consistent with these motives; the taxpayer became less involved in managing the mall, while his son's participation increased. Furthermore, the tax court properly found that the Commissioner's attempt to attack the substance of the transaction based on an application of family partnership rules was untimely because the Muserlians would be unduly prejudiced by the Commissioner's failure to raise this challenge before trial. *See Commissioner v. Transport Mfg. & Equip. Co.*, 478 F.2d 731, 735–36 (8th Cir.1973); *cf. Boe v. Commissioner*, 307 F.2d 339, 342 (9th Cir.1962) (Commissioner's introduction of "new" theory into tax dispute permitted because same facts necessary to refute new theory were also required to refute Commissioner's original theory, and therefore, no prejudice to taxpayer occurred). Thus, we proceed with our analysis based on the tax court's finding that the stated cost of acquiring the 24% interest in UNYR (the face amount of the note, $2.4 million) reflects the true economic cost to Associates and cannot simply be ignored in determining the partners' stepped-up basis.

██ We also agree with the tax court that, because the fair market value of Associates' proportionate share of UNYR's tangible assets, as determined by the Muserlians' expert, is only $1.283 million, the Muserlians cannot allocate $1.117 million to their basis in depreciable assets. Admittedly, the record does not indicate conclusively the proper asset category in which the $1.117 million belongs. There is no evidence that Shop City carried goodwill or going concern value in the amount of $1.117 million. The only testimony on the issue, given by the Muserlians' expert, indicated that Shop City had little or no goodwill. At the same time, however, an appraisal report prepared by the same expert provided that Shop City had "prominence, identity, ... [and] established shopper reputation," which usually are considered to be elements of goodwill. *See Commissioner v. Seaboard Finance Co.*, 367 F.2d 646, 649 (9th Cir.1966).

The Muserlians assert that there is no evidence to support the allocation of $1.117 million to goodwill. However, it is of no importance whether or not this is so. For our purposes, it only matters that the tax court found that the $1.117 million was some type of nondepreciable, intangible asset. The lack of specificity in the tax court's findings as to which category of assets it belongs is of no import here, because the Muserlians failed to carry their burden of showing that the excess over fair market value of partnership interest was "anything other than an intangible asset either in the nature of going concern value ... or goodwill." *McKay v. Commissioner*, 27 T.C.M. 1478, 1483 (1968) (citation omitted); *see also Copperhead Coal Co. v. Commissioner*, 272 F.2d 45, 47–48 (6th Cir. 1959); *Forward Communications Corp. v. United States*, 608 F.2d 485, 497 (Ct.Cl. 1979) (where court determined that FCC license may not be depreciated or amortized, and no need has been shown to value license in order to ascertain value of other assets, court may treat license "as part of the total intangible value under the broad rubric of going concern value or goodwill"); *cf. Jack Daniel Distillery v. United States*, 379 F.2d 569, 579 (Cl.Ct.1967) (where the fair market values of liquor producing firm as a whole and its tangible assets are firmly established, subtract the latter from the former to determine goodwill value of whiskey label). Because "in

the circumstances of this case, [the] proper adjustment of the basis was ... purely an accounting problem and therefore a question of fact for the Tax Court to determine," we defer to the tax court. *Dobson v. Commissioner,* 320 U.S. 489, 504, 64 S.Ct. 239, 248, 88 L.Ed. 248 (1943); *see United Finance & Thrift Corp. v. Commissioner,* 282 F.2d 919, 922 (4th Cir.1960), *cert. denied,* 366 U.S. 902, 81 S.Ct. 1045, 6 L.Ed.2d 202 (1961).

Moreover, a remand for further findings to support the tax court's decision is not necessary because the only arguments against the decision are untenable. *Cf. General Utils. & Operating Co. v. Helvering,* 296 U.S. 200, 206–07, 56 S.Ct. 185, 187, 80 L.Ed. 154 (1935); *Helvering v. Rankin,* 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343 (1935) ("[i]f the [tax court] has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for further proceedings"). Here, as discussed below, the Muserlians present no tenable argument in support of their theory that at least part of the $1.117 million differential was allocable to depreciable assets.

■ The Muserlians' strongest contention is that, if the tax court's method is followed, the resulting $1.117 million excess of the value of the tangible assets should be allocated not to goodwill but to a category of amortizable intangibles, as provided by 26 C.F.R. § 1.167(a)–3. The Muserlians describe the $1.117 million excess as an intangible asset called "premium value added to partnership property due to favorable financing." The Muserlians contend that, because the "premium" will endure only over the term of the note, it satisfies the requirement that its "use in the business or in the production of income [is] for only a limited period, the length of which can be estimated with reasonable accuracy." 26 C.F.R. § 1.167(a)–3 (1982); *see Lemmen,* 77 T.C. at 1352. However, this "premium" cannot be considered an asset of UNYR because only a single partner, Associates, receives its benefit, and it was acquired neither on account of UNYR or with UNYR funds. *See* N.Y.Partnership Law § 12 (McKinney 1988). The Muserlians suggest no other categories of amortizable intangibles that could be applicable, nor does the "premium" resemble other, common amortizable intangibles, such as patents or covenants not to compete. *See* 26 C.F.R. § 1.167(a)–3. Because "[n]o allowance [is] permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life," *id.,* and because there is no evidence in the record before us of an amortizable intangible, we reject the Muserlians' contention.

■ The Muserlians also argue that the face value of the note is the proper cost-basis for Associates, relying on section 483, as in effect in 1981. Section 483 applies to transactions in which installment contracts are used in the exchange or sale of property, *Cohen v. Commissioner,* 92 T.C. 1039, 1051 (1989), *aff'd,* 910 F.2d 422 (7th Cir. 1990) and "was ... enacted as a means of insuring that a taxpayer would not circumvent income tax provisions by structuring an installment contract to provide only for payments of principal (taxed as capital gains) and no interest (taxed as ordinary income)." *Ballard v. Commissioner,* 854 F.2d 185, 187 (7th Cir.1988); *Cohen,* 92 T.C. at 1051. As applied at the time of the transfer of the UNYR interest, section 483 provided a "safe harbor" interest rate so that the IRS could not recharacterize as interest a portion of the stated price of a sales contract if the interest rate on that contract was within the safe harbor. *Cohen,* 92 T.C. at 1049–50. Moreover, "[i]n the same transaction, buyers of depreciable property were able to depreciate the acquired property using an inflated basis. Section 483 was designed to provide a basis rule for installment sales by recharacterizing part of the stated principal payments as interest." *Id.* However, merely because the stated price of the agreement is part of Associates' basis does not mean that it is attributable to depreciable assets.

The Muserlians contend that, because the 6% interest rate on the note issued by Associates was within the safe harbor provided by section 483 in 1981, the stated sales price (the face value of the note) is

the proper basis for Associates. It is true that, although the market rate for interest in 1981 was between 15% and 20%, the Muserlians complied with the safe harbor rate determined by the Secretary of the Treasury and should not be penalized now because of the Secretary's tardiness in adjusting the rate to reflect the prevailing market rate at that time. Yet, our conclusion that Associates' depreciation deductions should have been calculated based on the allocation of $1.283 million to depreciable assets and $1.117 million to nondepreciable assets is not inconsistent with section 483 because the two figures added together still equal Associates' basis.

Finally, the Muserlians' argument that, under *United States v. Cornish*, 348 F.2d 175 (9th Cir.1965), the $1.117 million difference is properly allocated to a partly-depreciable, partly-nondepreciable category of value called "partnership overvaluation" similarly is misplaced. In *Cornish*, the transferee-partners paid a purchase price over two times the fair market value of the partnership interest acquired, *id.* at 179–80, and, although payments on the purchase were made in annual installments, they maintained that no portion of the amount paid was interest, *id.* at 183. In light of section 483, which was enacted later and did not apply to the *Cornish* transactions, the *Cornish* holding is not viable in this case because the Commissioner now has the authority under the section to recharacterize part of such installment payments as interest payments, which are not includable in basis. Also, the taxpayer did not exact an overvaluation premium from his family, as evidenced by the negligible difference between the appraised value of the 24% interest ($1,283,000) and the then-present value of the note given for that interest ($1,215,984). We believe that the tax court properly concluded that the hybrid category of "partnership overvaluation" described in *Cornish* is not implicated here.

## CONCLUSION

We affirm the decision of the tax court.