644 F.2d 1385
 81-1 USTC P 9442, 8 Fed. R. Evid. Serv. 550
 Tony ABATTI and Sheila Gruis, formerly known as Sheila
Abatti, Petitioners- Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
Tony ABATTI, Petitioner-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
Ben ABATTI and Margaret L. Abatti, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
Tony ABATTI and Ninfa Abatti, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
Ben ABATTI and Margaret L. Abatti, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 79-7139.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1980.
Decided May 15, 1981.
Rehearing and Rehearing En Banc July 29, 1981
 
 David I. Pincus, Washington, D. C., for respondent-appellant; Gilbert E. Andrews, Dept. of Justice, Tax Div., Washington, D. C., on brief.
 James O. Hewitt, San Diego, Cal., for petitioners-appellees.
 Appeal from the United States Tax Court.
 Before CHAMBERS and NORRIS, Circuit Judges, and SOLOMON,* District Judge.
 SOLOMON, Judge:
 
 
 1
 The tax court disallowed $2,356,381 in deficiencies assessed against Ben and Tony Abatti and their wives for the tax years 1971, 1972, and 1973. The Commissioner of Internal Revenue (the Commissioner) appeals. We reverse.
 
 
 2
 Ben and Tony Abatti are farmers. They conduct their farming operations through three entities. Abatti Brothers (B&T) is a partnership which owns or leases land. It has a calendar year. Abatti Farms (Farms) is a subchapter S corporation which grows crops for B&T and others. It has a May 31 fiscal year end. Abatti Produce (Produce) is a subchapter S corporation which harvests, packages and markets crops for B&T and others. It has a January 31 fiscal year end. All these entities use the cash method of accounting.
 
 
 3
 There were many intercompany transfers of funds for services rendered, disbursements of sales proceeds and intercompany loans. They kept no records to reflect the reasons for these transfers and there were no billings or invoices. At each entity's year end, the intercompany accounts were closed by payments to the other entities for amounts due. These intercompany transactions were the subject of the Commissioner's audit.
 
 
 4
 The 1971-1972 year end transactions illustrate the transactions which the Commissioner examined. On December 31, 1971, B&T obtained a one month loan of $861,127.36 from Security Pacific National Bank. On the same day B&T distributed $660,000 of the loan proceeds to Produce and the other $201,127.36 to Farms. These entities bought Time Certificates of Deposit (TCD's) in those amounts which they pledged to the bank as collateral for B&T's loan. On January 31, 1972, the certificates matured and the bank deposited the proceeds in B&T's account. On the same day B&T repaid the loan.
 
 
 5
 Frank Hatfield, an Internal Revenue Agent, was assigned to conduct an audit of Produce for its fiscal year ending January 31, 1971. He called Produce and asked to speak with Ben Abatti. Hatfield gave his name and told Ben that he was going to conduct an examination of Produce's 1971 tax return but Ben testified that Hatfield did not identify himself as an IRS agent. Ben told Hatfield to contact his accountant, Mickey Macklin, to make arrangements for the audit. Macklin had been the Abattis' accountant since 1959 and was responsible for making the entities' accounting decisions.
 
 
 6
 Because of the many intercompany transfers, Hatfield expanded the audit to all three entities for 1971, 1972, and 1973. Hatfield questioned Ben about these transactions and Ben referred him to Macklin, because as Ben later testified, he knew nothing about the record keeping and he relied on Macklin to do all the accounting work. Thereafter, Hatfield made his requests for information to Macklin. Macklin was not enrolled to practice before the IRS. In July, 1974, Macklin told Hatfield that the Abattis had retained Charles A. Pinney, Jr. as their attorney in this matter. Pinney was enrolled to practice before the IRS.
 
 
 7
 On October 9, 1974, Pinney, Macklin, and Hatfield met at Pinney's office. A ring binder prepared by Macklin, which contained accounting schedules and other data principally prepared by Macklin and by Mrs. Poloni, the Abattis' sister and bookkeeper, was delivered to Hatfield. The binder showed how the intercompany transactions were reported and how they should have been reported.
 
 
 8
 On April 15, 1976, the Commissioner sent revenue agent's reports for 1971 and 1972 to the three Abatti entities and to Pinney. The reports proposed adjustments to each entity's income and deductions on the ground that under Section 482 of the Internal Revenue Code, as amended, 26 U.S.C. § 482 (Section 482),[1] the intercompany transactions did not clearly reflect income. On the same day, the Commissioner mailed statutory notices of deficiency to the taxpayers. These notices contained the same explanation of the adjustments to income and deductions:
 
 
 9
 It is determined from the books and records of the partnership (or subchapter S corporation) that you have income of * * * dollars for the taxable year * * * in lieu of * * * dollars reported on your return.
 
 
 10
 The taxpayers petitioned the United States Tax Court for a redetermination of the deficiencies. The Commissioner, in his answer, admitted or denied the various allegations and affirmatively alleged fraud.
 
 
 11
 On June 29, 1976, Pinney, Macklin, Hatfield, and Revenue Agents Kellogg and Herstedt met at Pinney's office. A second binder containing additional schedules relating to 1974 and new summaries and other information was delivered to Hatfield. Herstedt reconciled the books and records of each of the entities with its tax return.
 
 
 12
 On March 30, 1977, the Commissioner issued notices of deficiency for 1973 to the taxpayers with the same explanation as those sent in 1976 but no revenue agent's report was mailed.
 
 
 13
 On March 27, 1978, at a tax court calender call, Pinney made a settlement offer but these was no settlement. The tax court set the trial for June 26, 1978.
 
 
 14
 On June 1, 1978, the court was informed that the taxpayers had discharged Pinney and had retained James O. Hewitt, an experienced tax attorney. The Commissioner moved to postpone the trial because Hewitt refused to stipulate to the deficiencies. The court denied the postponement and advanced the trial from June 26 to June 21.
 
 
 15
 On June 7, 1978, Hewitt asked the Commissioner's counsel what legal theories he planned to use. Counsel told him that he would be unable to answer until the following week. On June 16, 1978, counsel informed Hewitt that the Commissioner would rely on Section 482.
 
 
 16
 At the beginning of the trial Hewitt moved:
 
 
 17
 (1) to exclude reliance on Section 482 and evidence related thereto;
 
 
 18
 (2) to shift the burden of proof to respondent;
 
 
 19
 (3) to limit reliance of respondent to issues properly raised.
 
 
 20
 The tax court granted all three of these motions.
 
 
 21
 The tax court, because it found that the deficiency notices contained no valid grounds, permitted the Commissioner to amend his answers to allege that the deficiencies were based on fraud. This required the Commissioner to assume the burden of proof under Rule 142(a) of the Rules of Practice and Procedure of the United States Tax Court (Rule 142(a)).[2]
 
 
 22
 The Commissioner's counsel called Ben Abatti; four bank officials; Mrs. Poloni; Pinney; Macklin, who refused to testify on the ground of self-incrimination; and Hatfield. During direct examination of Hatfield, counsel sought to introduce the binders. The court held that the binders were inadmissible. The Commissioner's counsel stated that he was precluded from presenting his case based on fraud and rested. The tax court then announced from the bench that it would hold for the taxpayers.
 
 
 23
 In this appeal, the Commissioner contends that the tax court erred when it precluded him from relying on Section 482, when it shifted the burden of proof, and when it held that the binders were not admissible in evidence.
 
 
 24
 The Commissioner does not appeal the tax court's disallowance of the fraud penalties.
 
 SECTION 482
 
 25
 The tax court held that the taxpayers did not have fair warning that the Commissioner intended to invoke Section 482 when the statutory deficiency notices and the pleadings did not expressly mention that section.
 
 
 26
 The Commissioner may not rely on Section 482 when its use would surprise the taxpayer at the trial. CIR v. Chelsea Products, 197 F.2d 620 (3d Cir. 1952); Richard R. Riss, Sr., 56 T.C. 388 (1971). The Commissioner may, however, use Section 482 when the taxpayer has reason to believe that the Commissioner intends to invoke that section. In Rubin v. CIR, 56 T.C. 1155 (1971), aff'd per curiam, 460 F.2d 1216 (2d Cir. 1972), the court allowed the Commissioner to rely on Section 482 because the taxpayers conceded that the Commissioner had informed them of his intent to use that section during a conference well before trial.
 
 
 27
 In CIR v. Stewart, 186 F.2d 239 (6th Cir. 1951), the court rejected the taxpayer's contention that the deficiency notices were invalid because they contained no explanation of the method by which the Commissioner made the assessments. The court stated that "the taxpayer was fully advised, as shown by his petition filed with the Tax Court, of the reasons forming the basis for the Commissioner's actions." Id. at 242. Similarly, in Olsen v. Helvering, 88 F.2d 650 (2d Cir. 1937), the court stated, "(t)he taxpayer's petition ... makes it perfectly plain that he was not mislead ..." Id. at 651.
 
 
 28
 The agent's reports contained a full statement on Section 482. The taxpayers and Pinney, who was their attorney at that time and who had represented them in these cases for three years, received them. Pinney thereafter filed petitions for the taxpayers that contained numbers and other information showing that he referred to the revenue agent's report. It appears incredible that Pinney was unaware of the Commissioner's theory or the basis for the Commissioner's determinations.
 
 
 29
 It likewise appears incredible that James O. Hewitt, the taxpayers' new counsel, who had access to all of Pinney's files, did not know of the basis for the deficiencies. Hewitt's argument to the tax court, and the court's holding, was based solely on a stupid remark made two weeks before trial by the Commissioner's counsel. Five days before trial, the Commissioner's counsel did inform Mr. Hewitt of the basis of the Commissioner's case. The delay in telling Hewitt what he must have already known is not an adequate basis for the tax court to rule that the taxpayer did not have fair warning. We hold that the taxpayers had fair warning of the Commissioner's intent to rely on Section 482.
 
 THE BURDEN OF PROOF
 
 30
 The tax court interpreted the deficiency notices to mean that the Commissioner was alleging a difference between the entities' books and records and the taxpayers' individual tax returns. It therefore shifted the burden of proof to the Commissioner because the Commissioner had never argued that there was a difference. The Commissioner did not make that argument because he was contending that the intercompany accounts did not clearly reflect income.
 
 
 31
 The tax court's reading of the notices is a finding of fact which can be overturned only if clearly erroneous. Clark v. CIR, 266 F.2d 698 (9th Cir. 1959). We find that the tax court's interpretation was arbitrary because it gave an interpretation which the Commissioner did not intend and which the taxpayers could not reasonably have believed that the Commissioner intended. In our view a more reasonable interpretation of the notices is that they informed the taxpayers that there were deficiencies and the amount of them but contained no explanation. This type of notice is sufficient to raise the presumption of correctness and to place the burden of proof on the taxpayer. Barnes v. CIR, 408 F.2d 65 (7th Cir.), cert. denied, 396 U.S. 836, 90 S.Ct. 94, 24 L.Ed.2d 86 (1969). Judge Hand, in Olsen v. Helvering, supra, stated, "the notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." Id. at 651.
 
 
 32
 Based on its interpretation of the deficiency notices, the tax court found that the Commissioner's amended answer and proposed use of Section 482 were "new matter.' Rule 142(a) states that statutory notices of deficiency are presumptively correct unless the Commissioner introduces "new matter." This determination depends on whether the basis for the deficiency advanced at trial or in an amended answer is "inconsistent with some position necessarily implicit in the determination itself.... "Arthur Sorin, 29 T.C. 959, aff'd per curiam, 271 F.2d 741 (2d Cir. 1959). See also Estate of Scharf, 38 T.C. 15 (1962). In fact, if a deficiency notice is broadly worded and the Commissioner later advances a theory not inconsistent with that language, the theory does not constitute new matter, and the burden of proof remains with the taxpayer. Arthur Sorin, supra.
 
 
 33
 We hold that the wording of the deficiency notices was broad enough to include Section 482 and that the Commissioner's reliance on that section does not constitute new matter.
 
 THE BINDERS
 
 34
 The tax court held that the Commissioner could not introduce the binders because they were not relevant. The binders contain schedules and other material prepared by or under the direction of Macklin. The Commissioner sought to introduce them to "show what was done and what should have been done with respect to the intercompany settlements and transactions between the Abatti entities."
 
 
 35
 At the trial, the Commissioner's counsel called Ben Abatti as a witness. He testified that he knew nothing about the accounting arrangements of the entities; that Macklin made all the significant accounting decisions, including the year-end intercompany transactions; that Ben Abatti relied on Macklin and trusted him; and that Macklin prepared both the Abattis' individual income tax returns and the entities' information tax returns for 1971, 1972 and 1973. The binders are therefore relevant because Macklin admitted in them that his original treatment of the intercompany transfers was incorrect. The court can disregard any material that is not relevant and give the appropriate weight to that which is relevant.
 
 
 36
 The tax court erred in ruling that the binders were inadmissible hearsay. They are vicarious admissions under Fed.R.Evid. 801(d)(2)(D),[3] which requires that the statement concern a matter within the scope of the agent's employment and be made during the existence of the agency relationship.
 
 
 37
 Both requirements are met here. The binders are statements because they consist of material which Macklin, the Abattis' agent, prepared and compiled during the audit. The binders were within Macklin's scope of employment because they relate to accounting questions that the Abattis delegated to him.
 
 
 38
 The tax court ruled that the second binder was also inadmissible because it was offered during a settlement conference. Fed.R.Evid. 405. We doubt whether it was settlement conference but we need not reach this issue because the Commissioner has stated that "the acceptance of either binder would serve the purposes of the Commissioner here."
 
 
 39
 The taxpayers have suggested additional reasons for excluding the binders. We have examined them and none has any merit.
 
 
 40
 REVERSED AND REMANDED.
 
 CHAMBERS, Circuit Judge, dissenting:
 
 41
 I dissent. The bulk of the majority opinion is addressed to findings of fact made by the Tax Court, and as there is substantial evidence to support those findings, this Court should not interfere. Geneva Drive In Theatre, Inc. v. C.I.R., 622 F.2d 995 (9th Cir. 1980). The Tax Court judge found that the Commissioner failed to inform the taxpayers of his intent to rely on Section 482 in the deficiency notices, even though the April 1976 revenue agent's reports had suggested that adjustments to the taxpayers' income accounts should be made, based on Section 482. The Tax Court judge found specifically that the deficiency notices did not incorporate the agent's reports and that the taxpayers were not, in fact, on notice of the Commissioner's intent to rely on Section 482. Thus, Rubin v. C.I.R. and C.I.R. v. Stewart, cited by the majority, do not apply. Moreover, the record shows that the taxpayers had repeatedly asked the Commissioner to state his theory of the case but as of two weeks before trial, counsel for the Commissioner could not define it. And the taxpayers were not told of the intent to rely on Section 482 until five days before trial. If the Commissioner did not know he was relying on Section 482 until five days before trial, I have difficulty saying the taxpayers should have been on notice by references in a revenue agent's reports two years earlier.[1] The record also shows that the Tax Court judge made findings that the Commissioner was pleading "new matter" at the eleventh hour and that under Rule 142(a) of the Tax Court rules the burden of proof was therefore on the Commissioner. Again, we have findings of fact in which we should not interfere.
 
 
 42
 Finally, I cannot agree that it was court error to exclude from evidence binders which contained much irrelevant (as well as some relevant) evidence. The Commissioner's attorney could have separated the irrelevant material from the relevant; he was not entitled to have the binders admitted in toto.
 
 
 43
 I would affirm.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Section 482 provides: "In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion or allocate gross income, deductions, or credits, or allowances between or among such organizations, trades, or business, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades or businesses."
 
 
 [2]
 Rule 142(a) Provides: "The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon the respondent."
 
 
 [3]
 This rule provides: "(d) ... A statement is not hearsay if ... (2) ... The statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship...."
 
 
 [1]
 "Trial by ambush may produce good anecdotes for lawyers to exchange at bar conventions, but tends to be counter-productive in terms of judicial economy." United States v. Cook, 608 F.2d 1175, 1186 (9th Cir. 1979) (en banc)