YAMAHA MOTOR CORPORATION, U.S.A., AND SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yamaha Motor Corp. v. Commissioner
Docket No. 2674-88.
United States Tax Court
T.C. Memo 1992-110; 1992 Tax Ct. Memo LEXIS 131; 63 T.C.M. (CCH) 2176; T.C.M. (RIA) 92110; February 24, 1992, Filed *131 Dennis I. Meyer, C. David Swenson, A. Duane Webber, David N. Bowen, and Leonard B. Terr, for petitioners.
Beth L. Williams, David P. Fuller, H. Steven New, and Tracy E. Stetson, for respondent. NIMS
NIMS
NIMS, Chief Judge: This matter is before the Court on petitioners' motions relating to respondent's amendment to answer, specifically: (1) A motion concerning the burden of proof, (2) a motion to strike, and (3) a motion for more definite statement.
Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the taxable years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Background
During the years in issue, Yamaha Motor Corporation, U.S.A. (YMUS), which was organized and has its principal place of business in California, purchased tangible property for resale from its Japanese parent, Yomaha Motor Co., Ltd. (YMC). Petitioners YMUS and subsidiaries joined in filing consolidated Federal income tax returns.
Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Addition to Tax
Taxable Year Ended
Deficiency
Sec. 6661(a)
12/31/77
$ 354,834
-- 4/30/78
134,824
-- 4/30/79
6,247,043
-- 4/30/80
10,875,509
-- 4/30/81
35,893,094
-- 4/30/82
27,265,515
-- 4/30/83
26,044,004
$6,511,001 4/30/84
26,168,942
6,542,236
*132 A reference hereinafter to "1980", for example, is to the taxable year ended April 30, 1980.
In his notice of deficiency, respondent included the following explanation under the heading "Gross Income from Sales of Tangible Property":
It is determined that during the taxable years ended April 30, 1981 and April 30, 1982, you purchased tangible property for resale from Yamaha Motor Co., Ltd., a corporation by which you are controlled, at prices other than arm's length priices. In order to clearly reflect income, gross income from the sales of the tangible property purchased for resale at other than arm's length prices is increased, as provided ro in section 482 of the Internal Revenue Code from $75,040,872 to $174,245,356 for the taxable year ended April 30, 1981, and from $90,173,041 to $188,595,244 for the taxable year ended April 30, 1982. Accordingly your taxable income is increased $99,204,484 and $98,422,203 for the years ended April 30, 1981 and April 30, 1982 respectively.
An explanation paragraph for the following years, 1983 and 1984, was worded substantially the same except for the dates and amounts.
An explanation paragraph for the preceding years, 1979 and 1980, was *133 also worded substantially the same. This, however, was an alternative adjustment by respondent for these earlier years. His primary adjustment was the disallowance of net operating loss carrybacks from 1982 and 1983 because of his adjustments, including section 482 allocations, in those claimed loss years. Respondent accordingly introduced the section 482 explanation paragraph for 1979 and 1980 this way: "To the extent any change in the proposed adjustments [for the claimed loss years] results in available net operating loss deductions in the years ending April 30, 1979 and April 30, 1980, your taxable income for those years is increased for the reasons and the amounts set forth below".
In their petition, petitioners alleged that respondent erred in not recognizing that the prices YMUS paid to YMC for tangible property were equal to arm's-length prices. For facts relied upon, petitioners further alleged:
Respondent has based his determination of an arm's length price on the resale price method. * * * In this case, respondent has used * * * [comparative resale transactions] that involve functions and circumstances of sale that are materially different from petitioner's resales, and *134 respondent has failed to make any attempt to adjust for those differences.
Respondent formally answered this paragraph as follows:
Denies that respondent's determination is necessarily based on a resale price method; alleges respondent based his adjustment on the best available evidence due to petitioner's failure and refusal to provide requested information and documentation; alleges respondent's economist determined an arm's length price by comparing petitioner to comparable wholesale distributors of imported durable goods; * * * denies the * * * [last] sentence.
On August 16, 1991, respondent filed a motion for leave to file an amendment to his answer, in which motion he stated that the lodged amendment would not result in an increased deficiency for any relevant year. On September 30, 1991, the Court granted respondent's motion and filed his amendment to answer, which states in part that YMUS incurred sizable advertising and sales promotion expenses in 1980 through 1984, at least a substantial portion of which was "in connection with marketing or other services performed on behalf of YMC, or performed for the joint benefit of YMC and YMUS." Respondent further alleged that these *135 services were an "integral part of YMUS's business" and that YMUS performed them for less than arm's-length compensation. Citing section 1.482-2(b), Income Tax Regs. (entitled "Performance of services for another"), respondent asserted that he is entitled to allocate income to YMUS (1) in amounts at least equal to the costs and expenses incurred by YMUS in 1980 through 1984 in performing these services, and (2) in amounts that would have been received for performing similar services at arm's length for an unrelated party.
Respondent alternatively alleged in his amendment to answer, for 1982 through 1984, that YMUS maintained substantial excess inventory and thereby incurred substantial additional expenses, again as services performed on behalf of YMC or for the joint benefit of YMC and YMUS, and again at less than arm's-length compensation. Citing section 1.482-2(b), Income Tax Regs., respondent asserted that he is entitled to allocate income to YMUS (1) in amounts at least equal to the costs and expenses incurred by YMUS in 1982 through 1984 in performing these services, and (2) in amounts that would have been received for performing similar services at arm's length for an unrelated *136 party.
On October 29, 1991, petitioners filed a motion concerning the burden of proof for matters raised in respondent's amendment to answer and, as permitted by Rule 54, a joined motion to strike and motion for more definite statement. Respondent filed notices of objection, and petitioners filed responses to respondent's objections.
Petitioners' Motion Concerning the Burden of Proof
Rule 142(a) provides that although the burden of proof normally rests with the taxpayer, it rests with respondent for "any new matter * * * pleased in the answer". In defining "new matter" within the meaning of Rule 142(a), petitioners refer to the following language in Achiro v. Commissioner, 77 T.C. 881, 890 (1981), as the appropriate framework for our analysis:
The assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency is not a new matter requiring the shifting of the burden of proof. However, if the assertion in the amended answer either alters the original deficiency or requires the presentation of different evidence, then respondent has introduced a new matter. * * * [Citations *137 omitted.]
Petitioners contend that the so-called services theories in respondent's amendment to answer alter the original deficiencies and require the presentation of different evidence, thereby causing respondent to bear the burden of proof for all matters in the amendment to answer.
Respondent counters that the controlling principle is stated in Abatti v. Commissioner, 644 F.2d 1385, 1390 (9th Cir. 1981), revg. and remanding T.C. Memo. 1978-392: "In fact, if a deficiency notice is broadly worded and the Commissioner later advances a theory not inconsistent with that language, the theory does not constitute new matter, and the burden of proof remains with the taxpayer." Even if Achiro applies, argues respondent, the services theories neither increase the original deficiencies nor require the presentation of different evidence. Respondent has conceded, however, that he bears the burden of proof to a limited extent, as we discuss later.
Despite the parties' differing views, we need not here decide whether, or the extent to which, Achiro is inconsistent with Abatti. Our disposition of petitioner's motion concerning the burden of proof is inconsistent with *138 neither.
As recognized by both parties, our consideration of the "new matter" issue centers upon the deficiency notice, which states that respondent relied upon section 482 in making his determinations. No other section of the Internal Revenue Code is mentioned in the relevant explanation paragraphs, nor is there any explicit reference to the Income Tax Regulations. The deficiency notice does state, however, that respondent increased "gross income from the sales of the tangible property purchased for resale at other than arm's length prices".
Section 482, as pertinent here, authorizes the Secretary in general terms to allocate gross income among related entities if necessary to prevent the evasion of taxes or to reflect clearly the income of any of the entities. Petitioners do not contend that the seemingly broad scope of section 482 somehow fails to encompass respondent's services theories. Rather, petitioners argue that the references in the deficiency notice to "sales of the tangible property" limit the broad scope in such a way that respondent's services theories are not covered.
Contrary to respondent's position that the deficiency notice does not implicate any particular regulation *139 provision corresponding to section 482, we agree with petitioners that, as worded, the deficiency notice does invoke, albeit implicitly, paragraph (e) of section 1.482-2, Income Tax Regs. Paragraph (e) is entitled "Sales of tangible property", a nearly exact match with the phrasing of the deficiency notice. The other paragraph headings in section 1.482-2, Income Tax Regs. ("Determination of taxable income in specific situations"), are: (a) "Loans or advances", (b) "Performance of services for another", (c) "Use of tangible property", and (d) "Transfer or use of intangible property". Given the explicit and exclusive reference in respondent's amendment to answer to paragraph (b) of section 1.482-2, Income Tax Regs., petitioners argue that respondent's services theories are new matters.
Petitioners are certainly correct that the performance of services (the subject matter of section 1.482-2(b), Income Tax Regs., and the amendment to answer) is a fundamentally different activity than the sale of tangible property (the subject matter of section 1.482-2(e), Income Tax Regs., and the deficiency notice). Nonetheless, the question as framed by Achiro v. Commissioner, supra at 890, *140 is whether respondent's services theories either alter the original deficiencies or require the presentation of different evidence. See Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507-08 (1989). We first address the evidence question.
Section 1.482-2(e), Income Tax Regs., the provision respondent implicitly relied upon in his deficiency notice, describes allocation methods intended to reflect an arm's-length price for tangible property sales between a related buyer and seller. Such sales between related parties are called "controlled sales". Sec. 1.482-2(e)(1)(i), Income Tax Regs. "Uncontrolled sales", used for comparison purposes, are sales in which the buyer and seller are not related. Sec. 1.482-2(e)(2)(ii), Income Tax Regs. The three allocation methods described in detail are the comparable uncontrolled price method, the resale price method, and the cost plus method. Sec. 1.482-2(e)(2), (3) and (4), Income Tax Regs.
Under the comparable uncontrolled price method, the arm's-length price of a controlled sale is equal to the price paid in comparable uncontrolled sales, as adjusted. Sec. 1.482-2(e)(2)(i), Income Tax Regs. Uncontrolled sales are comparable, and *141 adjustments are permissible, if the physical property and circumstances involved are so nearly identical to the controlled sale that any differences (1) can be reflected by a reasonable number of adjustments to the price of the uncontrolled sales, and (2) have a definite and reasonably ascertainable effect on price. Sec. 1.482-2(e)(2)(ii), Income Tax Regs.
Under the resale price method, the arm's-length price of a controlled sale is equal to the applicable resale price reduced by an appropriate markup percentage, with adjustments. Sec. 1.482-2(e)(3)(i), Income Tax Regs. The applicable resale price is generally the price at which the property is resold by the buyer in an uncontrolled sale. Sec. 1.482-2(e)(3)(iv), Income Tax Regs. The appropriate markup percentage is the gross profit percentage, relative to sales, earned by a reseller or property that is both purchased and resold in an uncontrolled transaction, if the resale is sufficiently similar to that following the controlled sale. Sec. 1-482-2(e)(3)(vi), Income Tax Regs. Characteristics important to the similarity of resales include the functions performed by the reseller, examples being "packaging, labeling, delivering, maintenance *142 of inventory, minor assembly, advertising, selling at wholesale, selling at retail, billing, maintenance of accounts receivable, and servicing." Sec. 1.482-2(e)(3)(vi)(b), Income Tax Regs.
In the determination of an arm's-length price under the resale price method, adjustments should reflect material differences between the uncontrolled transactions used to calculate the appropriate markup percentage and the resale following the controlled sale. Sec. 1.482-2(e)(3)(ix), Income Tax Regs. These are differences in functions or circumstances that have a definite and reasonably ascertainable effect on price. Id. that have a definite and reasonably ascertainable effect on price. Id.
Under the cost plus method, the arm's-length price of a controlled sale is the cost of producing the property, as increased by the appropriate gross profit percentage, plus or minus adjustments. Sec. 1.482-2(e)(4)(i), Income Tax Regs. The appropriate gross profit percentage is the gross profit percentage, relative to costs, earned by a seller on the uncontrolled sales of property that are most similar to the controlled sale. Sec. 1.482-2(e)(4)(iii), Income Tax Regs. Characteristics important to the *143 similarity of the sales include the functions performed by the seller, examples being "contract manufacturing, product assembly, selling activity, processing, servicing, delivering." Sec. 1.482-2(e)(4)(iii)(b), Income Tax Regs. When the most similar sales used to derive the appropriate gross profit percentage differ in any material respect from the controlled sale, the arm's-length price must be adjusted to reflect the differences. Sec. 1.482-2(e)(4)(v), Income Tax Regs. The differences must have a definite and reasonably ascertainable effect on price. Id.
In his amendment to answer, respondent alleged that the described services performed by YMUS were connected with its purchases of tangible property from YMC. As is apparent from the regulations, the performance of services relating to sales of tangible property can be a factor in the application of the specific allocation methods. In particular, in the evaluation of whether uncontrolled transactions are similar enough to the controlled sale in question, the resale price method looks to the "functions performed by the reseller with respect to the property", including advertising and maintenance of inventory. Sec. *144 1.482-2(e)(3)(vi)(b), Income Tax Regs. Assuming that the uncontrolled transactions pass this threshold of similarity, the ultimate arm's-length price must account for "differences in functions or circumstances" by means of appropriate adjustments. Sec. 1.482-2(e)(3)(ix), Income Tax Regs.
Petitioners argue, however, that they need not establish any "services" facts in order to carry their burden of proof relating to the transfer pricing issue. According to petitioners, they will establish at trial the arm's-length nature of the prices paid to YMC, with reliance on the three detailed allocation methods in section 1.482-2(e), Income Tax Regs., but without any analysis of services that may have been performed. Petitioners thus suggest that respondent's services theories will require petitioners to present different evidence than they would have otherwise. Merely because petitioners disagree with respondent, however, about how to apply the regulations underlying the deficiency notice does not mean that petitioners may unilaterally define the evidence required for purposes of the "new matter" analysis. Stated another way, petitioners cannot rest on the most straightforward application *145 of the regulations, when the deficiency notice is not so limited, to establish the evidence required. Petitioners here, like taxpayers in other cases involving section 482, bear the burden of showing that respondent's determinations are arbitrary, capricious, or unreasonable. Sundstrand Corp. v. Commissioner, 96 T.C. 226, 353 (1991); Bausch & Lomb, Inc. v. Commissioner, 92 T.C. 525, 582 (1989), affd. 933 F.2d 1084 (2d Cir. 1991). Whether categorized as "services", "functions", or "circumstances", service-type activities plainly fall within the purview of section 1.482-2(e), Income Tax Regs., which respondent invoked in the deficiency notice. In the above regard, we note that the parties filed memoranda, pursuant to Court order, both before and after a pretrial conference on February 21, 1991. In respondent's memorandum filed February 8, 1991, he stated that whatever pricing method under section 1.482-2(e), Income Tax Regs., is used, there must be appropriate adjustments for differing services performed by the compared distributors, including advertising, promotion, and inventory functions. Respondent reemphasized this point *146 in his memorandum filed March 13, 1991. Consequently, except as discussed below in connection with respondent's concession, we do not believe that the evidence required to be presented for the services theories warrants the assignment of the burden of proof to respondent. Similar in principle is Stewart v. Commissioner, T.C. Memo. 1982-209, affd. 714 F.2d 977 (9th Cir. 1983), where this Court left the burden of proof with the taxpayer for respondent's substance-over-form theory, even though the deficiency notice referred only to section 482. We there noted that the two theories "overlap considerably". The Court of Appeals agreed, stating that the substance-over-form doctrine is so closely related to section 482 that it does not constitute a new matter. Stewart v. Commissioner, 714 F.2d at 989, 991. Petitioners' other principal attack on the amendment to answer is that respondent has decreased the amounts of the deficiencies appearing in the deficiency notice. Although the amendment to answer does not specify the deficiency amounts relating to the services theories, respondent has acknowledged in his filed objection to *147 petitioners' motion that the amounts are indeed less. In support of their position that a decrease in the deficiency amount constitutes a new matter, petitioners point to language in this Court's opinions that if an assertion in an amended answer "alters" the original deficiency, then respondent has introduced a new matter. See, e.g., Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Sanderling, Inc. v. Commissioner, 66 T.C. 743, 758 (1976), affd. in part, revd. in part 571 F.2d 174 (3d Cir. 1978). Petitioners also quote the following from Papineau v. Commissioner, 28 T.C. 54, 57 (1957): The statutory notice of deficiency is presumed to be correct, and the petitioner must bear the burden of overcoming this presumption. But where, as here, the respondent departs from the grounds upon which he based his original determination of deficiency, and in an amended answer relies, by way of an affirmative plea, upon other grounds resulting in decreased deficiencies by which he agrees to be bound, we deem him to have abandoned his original determination. Consequently, he must assume the burden of proof with respect *148 to the new grounds for his claim. [Citations omitted.]
Petitioners' cited authority is distinguishable. None of the cases, including Papineau, appears to involve a decreased deficiency, unaccompanied by required new evidence, that alone causes respondent to bear the burden of proof. In addition, respondent's assumption of the burden of proof in Papineau followed from our having deemed him to have abandoned his original determination. There is no such abandonment here. Respondent's amendment to answer indicates that the original determinations in the deficiency notice remain alive; the preamble states that the amendment is "in further support of respondent's determination made in the notice of deficiency" and that these are "alternative" assertions. The numbering of the amendment paragraphs, which begin with paragraph 7, shows that respondent has indeed filed an amendment to answer (i.e., a supplement) rather than an amended answer (i.e., a replacement). The decreased deficiency amounts of the services theories, when viewed in the context of surrounding circumstances, are not sufficient to cause respondent to bear the burden of proof. See Cally v. Commissioner, T.C. Memo. 1983-203. *149 As a final point on this motion, respondent concedes that he has the burden of proof for some of the assertions in his amendment to answer, namely paragraphs 7(h), 7(j)(2), and 8(g)(2). Paragraph 7(h) states in part that "The services performed by YMUS in connection with advertising and selling product may be considered an integral part of YMUS's business." This statement, in the context of the paragraph as a whole, corresponds to section 1.482-2(b)(7), Income Tax Regs., which describes situations in which services are considered an "integral part" of the business activity of either the renderer or the recipient. The general rule for services is that the arm's-length charge is deemed equal to the costs or deductions incurred with respect to the services by the renderer. Sec. 1.482-2(b)(3), Income Tax Regs. For "integral part" services, however, the arm's-length charge is not deemed equal to such costs or deductions, but is instead equal to the amount that would be charged for similar services in independent transactions between unrelated parties. Id. Paragraphs 7(j)(2) and 8(g)(2) of the amendment to answer, which articulate a vague arm's-length standard without mention *150 of costs or deductions, also arguably apply to the "integral part" provisions of the regulations. In attempting to limit his concession, respondent maintains that he bears the burden of proof only to establish that the advertising, promotion, and inventory activities were integral parts of the business of YMUS under the regulations, and to establish the appropriate profit elements or markups (over costs and expenses) that an arm's-length service provider would have received. The foundation for this argument is that the burden of proof for respondent's costs-and-expenses theory rests with petitioners, and with this we agree. (Although the amendment to answer refers to "costs and expenses", which differs at least in wording from the "costs or deductions" standard in the regulations, petitioners have not raised the point, and we do not deem it significant.) Also according to respondent, however, to the extent his specific allegations in the amendment to answer support his costs-and-expenses approach as well as his integral part approach, petitioners' burden of proof on costs and expenses relieves respondent from the burden of proof for the same allegations as applicable to his integral-part *151 approach. We agree with petitioners that respondent's attempt to limit his concession in this way is inappropriate, in part because the regulations do not describe the integral-part allocation method in specific terms as a costs-and-expenses method plus a profit markup. See sec. 1.482-2(b)(3), (7), Income Tax Regs. Accordingly, we believe that respondent should have the burden of proof for his entire integral-part position, which includes all necessary elements, regardless of any overlap with elements of his costs-and-expenses position (or other theories) for which petitioners have the burden of proof. Except for respondent's concession and our modification thereof, petitioners' motion concerning the burden of proof will be denied. Petitioners' Motion to Strike
Pursuant to Rule 52, petitioners moved to strike portions of respondent's amendment to answer, namely (1) statements relating to 1980, 1981, and 1982, and (2) statements that the services theories "further support" the deficiency notice. Rule 52 permits the Court to strike from a pleading "any insufficient claim or defense or any redundant, immaterial, impertinent, frivolous, or scandalous matter." Generally, motions *152 to strike are disfavored and should not be granted unless the objectionable allegations have no possible relation to the subject matter of the litigation and unless the moving party makes a showing of prejudice. Estate of Jephson v. Commissioner, 81 T.C. 999, 1000-1001 (1983). Concerning respondent's references to 1980, 1981, and 1982 in his amendment to answer, petitioners' summary of the applicable legal principles is that -- the allegations in an answer or amendment to answer must have a bearing upon a matter for which there was a careful and considered "determination" by the Commissioner (or, at a minimum, an investigation of the relevant facts in a timely audit examination). Respondent may not simply raise speculative matters relating to taxable years for which he has performed no examination and made no "determination" regarding section 482. * * *
For 1980, petitioners contend that respondent failed even to examine that taxable year prior to expiration of the normal limitations period in section 6501. As already noted, respondent's primary position for 1980 in the deficiency notice is that petitioners are not entitled to net operating *153 loss carrybacks from other years; the section 482 adjustment is an alternative position. Petitioners do not directly dispute that present section 6501(k) permits this sort of alternative adjustment in the deficiency notice. (In specified circumstances, section 6501(k) (formerly section 6501(m)) extends the limitations period for assessments that are unrelated to the disallowance of carrybacks. See generally Pesch v. Commissioner, 78 T.C. 100, 132-137 (1982).) Petitioners do object, however, to an allegedly unwarranted extension of the section 6501(k) principle to new substantive matters raised in amended pleadings. For 1981 and 1982, petitioners do not deny that respondent made a timely examination. Instead, they maintain that respondent's factual investigation and analysis of those years had nothing to do with section 482, that petitioners' first knowledge of a section 482 adjustment arose upon receipt of the deficiency notice, and that respondent based his section 482 adjustments on a "naked application of the contrived gross margins" contained in the report of respondent's economist. On the matter of prejudice, petitioners argue that respondent will now *154 abuse the Court's discovery procedures by conducting a belated audit and examination of the 3 years in question and that petitioners' necessary presentation of evidence at trial will expand considerably. It is well established that, in the absence of specific exceptional circumstances, this Court will not look behind the notice of deficiency to question respondent's motives and procedures. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974). Petitioners rely most heavily upon Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), in urging us to consider how respondent arrived at his adjustments here. In Scar, respondent in his deficiency notice disallowed a deduction from a partnership with which the taxpayers were not connected. Documents attached to the deficiency notice indicated that the deficiency was arrived at without an examination of the taxpayers' return. The Court of Appeals, in concluding that this Court lacked jurisdiction, stated that "the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner *155 has 'determined' a 'deficiency' in respect to that taxpayer." Scar v. Commissioner, 814 F.2d at 1368. In relying upon the rationale of the Court of Appeals in Scar, petitioners attempt to stretch the case beyond its facts and beyond the interpretations provided by subsequent decisions. (Most obviously, the issue in Scar was whether this Court had jurisdiction, a matter not contested in petitioners' motions here.) In Campbell v. Commissioner, 90 T.C. 110, 113-114 (1988), we distinguished Scar and concluded that this Court did not lack jurisdiction. Important to our conclusion was a principle derived from Scar: "Where the notice of deficiency does not reveal on its face that the Commissioner failed to make a determination, a presumption arises that there was a deficiency determination." Campbell v. Commissioner, supra at 113. In Clapp v. Commissioner, 875 F.2d 1396, 1402 (9th Cir. 1989), the court similarly interpreted the Scar holding as dependent upon a deficiency notice revealing on its face that no determination had been made: Furthermore, as the Tax Court has since pointed *156 out, Scar did not even require any affirmative showing by the Commissioner that a determination set forth in an alleged notice of deficiency was made on the basis of the taxpayers' return. Only where the notice of deficiency reveals on its face that the Commissioner failed to make a determination is the Commissioner required to prove that he did in fact make a determination. Campbell v. Commissioner, 90 T.C. 110 (1988). Here, nothing on the face of the notice reveals that the Commissioner failed to make a determination.
In the instant case, petitioners have directed us to nothing on the face of the deficiency notice, and we see nothing, that reveals respondent's failure to make a determination. Moreover, unlike the taxpayers in Scar, petitioners have not argued that respondent did not act upon the contents of petitioners' tax returns. See Munro v. Commissioner, 92 T.C. 71, 74-75 (1989). Petitioners contend that even if respondent made valid determinations under the Scar analysis, the statements in the amendment to answer regarding 1980, 1981, and 1982 must nonetheless be stricken. Petitioners quote from Clapp v. Commissioner, supra at 1402: *157 "The facts of this case would better fit an argument that the Commissioner made the determination for improper reasons or following improper procedures." However, because the court neither invalidated the deficiency notices nor granted the appellant-taxpayers other relief, this quoted passage is of no benefit to petitioners here. Further, Rule 52 says nothing of "improper" determinations as a valid ground for a motion to strike. Petitioners' argument regarding section 6501(k) is likewise unavailing. Section 6501(k) in normal application favors respondent, and we are not inclined to take it out of context and thereby render it favorable to petitioners. Petitioners press onward, arguing that there is precedent in the section 482 area for our looking behind the deficiency notice in deciding whether respondent was arbitrary, capricious, or unreasonable. They cite, among other cases, Haag v. Commissioner, 88 T.C. 604, 622 n.14 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); American Terrazzo Strip Co. v. Commissioner, 56 T.C. 961, 971-973 (1971); and PPG Industries, Inc. v. Commissioner, 55 T.C. 928, 993 (1970). *158 In addition, petitioners note that we have stated we must sustain respondent's section 482 determinations absent a showing that he abused his discretion. E.g., Sundstrand Corp. v. Commissioner, 96 T.C. 226, 353 (1991); Bausch & Lomb, Inc. v. Commissioner, 92 T.C. 525, 582 (1989), affd. 933 F.2d 1084 (2d Cir. 1991). An alleged abuse of respondent's discretion can justify a broader scope of inquiry into his actions. Capitol Federal Savings & Loan v. Commissioner, 96 T.C. 204, 213-215 (1991). As applied to section 482, however, the "abuse of discretion" and "arbitrary, capricious, or unreasonable" standards are closely linked and, as demonstrated by petitioners' case authority, typically analyzed by the Court in the light of the evidence presented at trial. In the present posture, which is consideration of petitioners' motion to strike, we believe that looking behind the deficiency notice would be inconsistent with the stringent requirements for the granting of such motions. See Logan v. Commissioner, 86 T.C. 1222, 1230-1232 (1986); Estate of Jephson v. Commissioner, 81 T.C. 999, 1000-1001 (1983). *159 Apart from references to the years 1980, 1981, and 1982, petitioners ask us to strike from the amendment to answer statements that the services theories "further support" the deficiency notice. Petitioners' grounds are that (1) respondent's dollar adjustments under his services theories, although not specified, must amount to substantially less than the amounts in the deficiency notice, and (2) the alleged services are different in nature than the purchases of tangible property mentioned in the deficiency notice. In spite of petitioners' detailed arguments, we fail to see what petitioners hope to gain by the striking of this language. Respondent used the "further support" language only in preambles in the amendment to answer, presumably to avoid the inference that he was raising new matters within the meaning of Rule 142(a). Petitioners are in effect rearguing two points raised in their motion concerning the burden of proof. In our analysis of that motion, we accepted both points as true but discounted their importance. Accordingly, even if we were to strike this language, petitioners' battle won would not affect the war lost. Nonetheless, because we see no reason to strike *160 the challenged language, we decline to do so. As to petitioners' prejudice arguments, we have already considered the expanded evidence question in our analysis of petitioners' motion concerning the burden of proof. See also Estate of Jephson v. Commissioner, supra at 1003 (alleged prejudice of expanded trial evidence, after weighing against other considerations, not sufficient to grant motion). Concerning whether respondent will now abuse the discovery process, we believe that our Rules provide adequate means to address any such eventuality. In connection with the motion to strike, the parties have each presented a detailed version of the information available to respondent, and relied upon by him, in arriving at the adjustments in his deficiency notice. Further, respondent has defended his lack of precision in the deficiency notice and amendment to answer as the result of uncooperative petitioners during the information-gathering processes of examination and, more recently, discovery. Petitioners, not surprisingly, deny any such lack of cooperation. Our disposition of the motion to strike, for the reasons stated above, forecloses our consideration of *161 these matters. Petitioners' motion to strike will be denied. Petitioners' Motion for More Definite Statement
Pursuant to Rule 51(a), petitioners moved for a more definite statement from respondent than appears in his amendment to answer. Petitioners request that respondent disclose the following relating to his services theories: (1) The amounts of the adjustments and arm's-length charges, and the method of computation; and (2) the provisions of section 1.482-2(b), Income Tax Regs., upon which respondent relies. Respondent's amendment to answer does indeed lack specific dollar amounts for adjustments and arm's-length charges. The only dollar amounts listed are advertising and sales promotion expenses allegedly incurred by YMUS during 1980 through 1984 and totaling over $ 186 million. The amendment to answer also does not refer explicitly to any subparagraphs or subdivisions within paragraph (b) of section 1.482-2, Income Tax Regs.
The "fair notice" requirement for pleadings, set forth in Rule 31(a), serves as the basic standard for consideration of Rule 51(a) motions. Ryskiewicz v. Commissioner, 63 T.C. 83, 85 (1974). Rule 51(a) itself provides, *162 in part: (a) General: If a pleading to which a responsive pleading is permitted or required is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, then the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. * * *
A motion for more definite statement must be denied if a responsive pleading can be framed. Estate of Allensworth v. Commissioner, 66 T.C. 33, 34 (1976). In our view, the amendment to answer in this case is neither vague nor ambiguous within the meaning of Rule 51(a) because petitioners can reasonably be expected to frame a responsive reply. We observe at the outset that section 1.482-2(b), Income Tax Regs., is not so detailed and complex that petitioners should need specific subparagraph and subdivision references to understand the essence of the services theories. As discussed below, petitioners can seek any desired precision through discovery, with a head start having been provided by respondent's memoranda opposing petitioners' motions. To satisfy Rule 37(b), petitioners' formal *163 reply should contain a specific admission or denial, or a statement about lack of sufficient knowledge or information, in response to each material allegation in the amendment to answer on which respondent has the burden of proof. In this regard, petitioners' motion is itself vague because petitioners have not directed us to any allegations or supporting facts in the amendment to answer that they cannot respond to in one of these ways. Merely because respondent does not specify arm's-length amounts, as an example, does not mean that all related assertions are impermissibly vague or ambiguous. Petitioners presumably can fashion responses to statements like "YMUS did not receive arm's length compensation in return for performing [specified] services", even without being informed by respondent as to precisely what that arm's length compensation would be. Also apparently susceptible to a response is respondent's allegation that he is entitled to allocate income to YMUS in amounts that an independent party would have received at arm's length for similar activities, even without respondent's specifying the amount of his income adjustment. Some of the allegations are surely less precise *164 than petitioners or the Court might prefer, but they are not "so vague or ambiguous that a party cannot reasonably be required to frame" a reply within the meaning of Rule 51(a). Petitioners rely upon four cases for the proposition that respondent has a duty to provide fair notice in his deficiency notice or pleadings of the specific amounts and matters in controversy and the specific basis for his position. None of these cases, however, arose in our present procedural setting, and petitioners have greatly exaggerated their relevance. Both Seligman v. Commissioner, 84 T.C. 191, 197-199 (1985), affd. 796 F.2d 116 (5th Cir. 1986), and Muserlian v. Commissioner, T.C. Memo. 1989-493, affd. 932 F.2d 109 (2d Cir. 1991), involved issues raised by respondent for the first time at trial or in his opening brief. In Commissioner v. Transport Mfg. & Equip. Co., 478 F.2d 731, 734-736 (8th Cir. 1973), affg. 57 T.C. 469 (1971) and 56 T.C. 388 (1971), respondent avoided mention of section 482 itself, not merely section 482 theories, until his post-trial briefs. The common *165 theme running through these cases is unreasonable timing that causes the taxpayer to be unfairly surprised and therefore prejudiced. In fact, Transport Mfg. and Seligman both point out that without such surprise and prejudice, the taxpayer has no cause for complaint. Transport Mfg. & Equip. Co. v. Commissioner, 478 F.2d at 735 n.8; Seligman v. Commissioner, 84 T.C. at 198 & n.7. See also Pagel, Inc. v. Commissioner, 91 T.C. 200, 211-212 (1988), affd. 905 F.2d 1190 (8th Cir. 1990). With a scheduled trial over 9 months after the filing of respondent's amendment to answer, no such surprise or prejudice is present here. Indeed, respondent first apprised petitioners of a services theory, with express reference to section 1.482-2(b), Income Tax Regs., in his February 8, 1991, memorandum, nearly 8 months before the filing of his amendment to answer. Carnation Co. v. Commissioner, 71 T.C. 400, 412-413 (1978), affd. 640 F.2d 1010 (9th Cir. 1981), the other case cited by petitioners, is also not on point. The deficiency notice, which contained two adjustments in specific *166 dollar amounts, lacked any reference to a Code section, a regulation section, or a theory, and respondent's answer was "no more illuminating." Carnation Co. v. Commissioner, 71 T.C. at 412. The instant case does not involve such an uninformative deficiency notice or pleadings. Moreover, the taxpayer in Carnation, who neither challenged the deficiency notice nor argued prejudice, did not place the issue formally before the Court. A motion for a more definite statement under Rule 51(a) is not appropriate "merely to obtain a statement of the Commissioner's grounds or the facts or theories upon which he relies." Estate of Allensworth v. Commissioner, supra at 35. We recognize, however, that petitioners are entitled to know precise amounts, computation methods, and theories at some point prior to trial. The last sentence of Rule 51(a) suggests the appropriate tactic for petitioners: "See Rules 70 [general discovery provisions] and 90 [requests for admission] for procedures available to narrow the issues or to elicit further information as to the facts involved or the positions of the parties." See also the explanatory note to Rule 51(a), *167 60 T.C. 1092 (1973). Petitioners' motion for more definite statement will be denied. An appropriate order will be issued.